OPINION
{¶ 1} Defendant-appellant, Tamara Hazelbaker, appeals a decision of the Fayette County Court of Common Pleas in a forcible entry and detainer action granting appellee, Showe Management Corporation d/b/a Jeffersonville Green Apartments ("Showe Management"), possession of the premises leased by appellant. We affirm the decision of the trial court.
 {¶ 2} In February 2004, appellant entered into a lease subsidized by the Department of Housing and Urban Development (HUD) under which she paid $24 per month towards rent, due on the first day of each month. The lease provided for a "grace period" until the fifth day of each month, after which late fees were assessed. Under the lease, failure to report any changes in occupancy permitted Showe Management to increase the rent to the HUD approved market rent. The lease also provided that Showe Management could terminate the agreement for "material noncompliance" with its terms.
 {¶ 3} On August 9, 2005, appellant received a letter from Showe Management informing her of its belief that appellant failed to provide notice of a change in household composition after Mark Baker was repeatedly observed at her apartment. The letter notified appellant that her rent would be raised to $586 as of September 1, 2005 if she failed to meet with the property manager. No meeting was ever arranged.
 {¶ 4} On September 7, 2005 Showe Management mailed and hand delivered an eviction notice to appellant for failing to pay $586 for September rent and for accommodating an unauthorized tenant. A second notice was mailed and hand delivered on September 15, 2005, this time informing appellant that her tenancy was being terminated for failing to pay $24 for the month of September. Appellant attempted to submit a $36 money order on September 13, 2005, including September rent and late fees. Refusing to accept this tardy tender, Showe Management commenced the instant action to regain possession of the premises.
 {¶ 5} Following a bench trial, the common pleas court entered its judgment in favor of Showe Management on November 7, 2005. The court concluded that Showe Management failed to establish that Mark Baker was residing in appellant's apartment. Nonetheless, the court found that Showe Management proved that appellant failed to pay the tenant rent of $24 for the month of September within the grace period specified by the lease, and confirmed Showe Management's right to reject any attempted late payment after this period. The court also determined that the September 15, 2005 eviction notice complied with state and federal laws. Accordingly, the trial court held that appellant breached the lease and ordered restitution of the premises to Showe Management. Appellant timely appealed.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED WHEN IT FOUND THAT MS. HAZELBAKER BREACHED HER LEASE BY NOT PAYING $24.00 BY SEPTEMBER 5th WHEN APPELLEE HAD TOLD HER RENT WAS $586.00, NOT $24.00."
 {¶ 8} Appellant argues that Showe Management had a duty under the lease and federal law to determine and inform her of the amount of rent owed as a condition precedent to her duty to pay rent. Because Showe Management failed to clearly resolve and notify her as to whether she owed $586 or $24, appellant argues that she did not breach the lease in failing to timely submit September rent.
 {¶ 9} Under the terms of the most recent recertification to determine appellant's HUD tenant eligibility, which appellant testified she signed in July 2005, the amount of rent owed by appellant was $24 per month. Appellant was thereby aware of her monthly rent. Cf. Haller v. Borror Corp. (1990),50 Ohio St.3d 10, 14 (indicating that a person who signs an agreement is held to be on notice of its terms). Appellant attempted to tender $36, including monthly rent and late fees, for the first time on September 13, 2005, after the grace period for that month had expired. The lease provided that Showe Management may reject late payments and terminate the lease for nonpayment of rent. Showe Management was thus within its rights when it refused appellant's belated payment and elected to terminate the agreement by deliverance of statutory notification of eviction.
 {¶ 10} Appellant's first assignment of error is overruled.
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "THE TRIAL COURT ERRED IN EVICTING MS. HAZELBAKER WITHOUT PRIOR NOTICE AND A MEANINGFUL OPPORTUNITY TO BE HEARD."
 {¶ 13} Appellant asserts that her Fourteenth Amendment due process rights were violated when she was unlawfully deprived of her property interest in the premises. Appellant emphasizes the mistaken belief that her rent had been raised to $586 to justify her late tender of tenant rent, and insists that she was entitled to notice and an opportunity to be heard regarding the precise amount due before expiration of the September 5, 2005 grace period.
 {¶ 14} Ohio courts have recognized a tenant's constitutionally protected interest in continued occupancy of federally subsidized housing. Vienna Forest Apts. v. Passmore,
Butler App. No. CA2004-05-104, 2005-Ohio-2368, ¶ 18, citingGorsuch Homes, Inc. v. Wooten (1992), 73 Ohio App.3d 426, 432. A landlord may not terminate a tenancy in a subsidized housing unit absent "good cause," and must afford the tenant notice and an opportunity to be heard before material noncompliance with the rental agreement or nonpayment of rent may serve as grounds for eviction. See Section 247.3, Title 24, C.F.R. See, also, GorsuchHomes at 432.
 {¶ 15} The record shows that Showe Management provided appellant with conflicting notices regarding the amount of rent due for September. Property manager Colleen O'Connor testified that she informed appellant that the amount due was $586, and this amount was reflected in the September 7, 2005 eviction notice. The trial court determined that Showe Management failed to prove that Baker was an unauthorized tenant, and therefore the rent due for September was the $24 tenant rent and not the $586 market rent. This error on the part of Showe Management, however, did not relieve appellant of her obligation to remit $24 by September 5, 2005 under the terms of the lease. Cf. SandefurMgt. v. Minor (Apr. 18, 1985), Franklin App. No. 84AP-220, 1985 WL 10250 at *2 (holding that the duty of a tenant in federally subsidized housing to pay rent is not contingent upon a landlord's prompt recalculation of tenant rent after a change in household income). The aforementioned terms of her lease afforded appellant notice of this amount, which she could have tendered prior to the end of the grace period. See Haller,50 Ohio St.3d at 14. In addition, according to the trial court, the September 15, 2005 eviction letter complied with statutory requirements[1] and provided appellant with notice that her property interest was being terminated.
 {¶ 16} Appellant stresses the fact that a meeting was never held to discuss Baker's disputed occupancy or a potential raise in rent. She emphasizes the following sentence in the August 9, 2005 letter warning that her rent would increase to $586 if Mark Baker was found to be an unauthorized tenant: "If you do not meet with me by the above date, YOUR RENT WILL BE RAISED TO $586.00 ON THE FIRST DAY OF September 2005." (Emphasis in original.) Appellant testified that she believed her rent had in fact been raised to $586 because no such meeting was ever held, and complains that the failure of Showe Management to meet with her to discuss the rent deprived her of an opportunity to be heard.
 {¶ 17} Both the September 7, 2005 and September 15, 2005 eviction notices explained that appellant had the right to discuss the proposed termination of tenancy with the landlord within 10 days of the respective dates of the notices. Pertinent language in the notices provided:
 {¶ 18} "If you request a meeting within this [10-day] period, the landlord will consider your response or objection and whether judicial action will be brought. If a meeting is held and a decision is made by the landlord to proceed with termination of your tenancy and you still remain in the premises after the date specified for termination * * *, please be advised that the landlord may seek to enforce a termination only by bringing a judicial action, at which time you may present a defense."
 {¶ 19} This language apprised appellant of her right to request a meeting with management. Appellant was unable to present evidence that she pursued these opportunities to be heard other than a plain assertion that she attempted to schedule a meeting without success. See, generally, Real Properties Servs.Mgt. v. Harigle (July 30, 1997), Crawford App. No. 3-96-21, 1997 WL 430773 at *3. Appellant neglected to undertake measures to contest the proposed rent increase or to otherwise inform Showe Management of her inability to pay September rent. In addition, appellant was unable to establish that Showe Management prevented her from pursuing a meeting within the respective ten-day periods following the two eviction notices.
 {¶ 20} Under these facts, the termination of the lease agreement was in accordance with lease provisions and HUD regulations. We conclude that appellant's due process rights were not violated in Showe Management's termination of her lease.
 {¶ 21} Appellant's second assignment of error is overruled.
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "[THE] TRIAL COURT ERRED IN FAILING TO APPLY EQUITY TO RELIEVE MS. HAZELBAKER OF THE FORFEITURE OF HER LEASEHOLD."
 {¶ 24} Insisting that the trial court failed to address certain equitable defenses that she raised at the trial level, appellant implores the court to invoke principles of equity to avoid a forfeiture of the premises.
 {¶ 25} In determining whether to declare a forfeiture of a property interest, it is within the discretion of the trial court to weigh all equitable considerations. See, e.g., Joseph J.Freed Assoc. v. Cassinelli Apparel Corp. (1986),23 Ohio St.3d 94. We therefore review the court's decision for an abuse of discretion. See id. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} We are not persuaded that the equities of this case weigh in favor of appellant. It is well established that equity abhors a forfeiture. See, e.g., In re Forfeiture of Property ofMartin, Clinton App. No. CA2004-07-018, 2005-Ohio-2663, ¶ 7. However, appellant failed to tender the $24 tenant rent for September, thereby breaching her lease. Although there may have been some confusion surrounding whether her rent would be raised to $586, this does not excuse appellant's duty to pay $24 by September 5, 2005 in view of the fact that she was on notice pursuant to the terms of the lease that this was the minimum amount due. See Haller, 50 Ohio St.3d at 14. The trial court thus did not abuse its discretion in ordering a forfeiture of the premises.
 {¶ 27} Appellant's third assignment of error is overruled.
 {¶ 28} Judgment affirmed.
Walsh and Bressler, JJ., concur.
[1] See Section 247.4, Title 24, C.F.R. for eviction notice guidelines for HUD subsidized properties.